# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

_____

| | |
|---|---|
| DUCKS UNLIMITED, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 14-2885-SHM-tmp |
| | ) |
| BOONDUX, LLC and CALEB | ) |
| SUTTON, | ) |
| | ) |
|     Defendants. | ) |

_____

## REPORT AND RECOMMENDATION
_____

Before the court is plaintiff Ducks Unlimited, Inc.'s ("Ducks Unlimited") Motion to Enforce Settlement Agreement or, in the Alternative, to Schedule a Judicial Settlement Conference and Status Conference, filed January 25, 2016.[1] (ECF No. 59.) Defendants Boondux, LLC and Caleb Sutton (collectively "Boondux") filed a response in opposition to the motion on February 10, 2016. (ECF No. 66.) That same day, Boondux filed the declaration of Russell Primeaux, lead counsel for Boondux in this case, along with five attached exhibits. (ECF No. 65.) Ducks Unlimited filed a reply in support of its motion on February 23, 2016, and attached as an exhibit the declaration of Lisa DeJaco, trial counsel for Ducks Unlimited. (ECF Nos. 71 &

_____

[1]This motion is before the court pursuant to Administrative Order No. 2016-02.

70-1.)   On March 1, 2016, the court held a hearing on the motion.  (ECF No. 72.)   The court heard testimony from Steven King, Assistant General Counsel at Ducks Unlimited, and Mr. Primeaux.   The court also admitted into evidence as an exhibit a letter dated October 12, 2015, sent to Boondux by Ducks Unlimited.

The court has now considered the memoranda of law filed in support of and in opposition to the motion, the testimony of the witnesses, the exhibits before the court, and the applicable law.   For the following reasons, the court recommends that Ducks Unlimited's motion be denied.

## I.   PROPOSED FINDINGS OF FACT

Ducks Unlimited initiated this action against Boondux on November 12, 2014, alleging trademark infringement, trademark dilution, and copyright infringement.  (ECF No. 1.)   On March 16, 2015, the court entered a scheduling order, which required the parties to engage in mediation by September 18, 2015.  (ECF No. 37.)   On September 18, 2015, the parties filed a joint motion to modify the scheduling order, stating that they were unable to schedule mediation until after the deadline.  (ECF No. 47.)   The court granted the parties' motion and extended the deadline for mediation to September 28, 2015.  (ECF No. 48.)

On September 28, 2015, the parties engaged in mediation. Although the mediation session was not ultimately successful, the parties agreed to continue discussing a potential settlement. With Ducks Unlimited's consent, Boondux filed a motion to modify the scheduling order deadline for dispositive motions on October 6, 2015. In its motion, Boondux stated that although settlement discussions had been unsuccessful thus far, the parties were hopeful that further discussions during the extended period would facilitate a resolution of the case. (ECF No. 50.) The court granted Boondux's motion and extended the deadline for filing dispositive motions to November 12, 2015. (ECF No. 51.)

Between October 6, 2015, and November 3, 2015, the parties engaged in settlement discussions. (Decl. of Russel Primeaux, ECF No. 65-1, ¶ 4.) On October 12, 2015, Ducks Unlimited sent Boondux a letter containing several proposed settlement terms:

> (1) Altered Boondux logo. Boondux will adopt a substitute logo per approval by Ducks Unlimited, which approval will not be unreasonably withheld.
> . . .
>
> (2) Royalties
>
> > * Boondux must pay a back royalty of 20% on all sales to the effective date of the settlement.

*  Boondux  must  provide  current  inventory  numbers,
        and  may  sell  out  the  current  inventory  at  a
        royalty rate of 20%.

    (3) Other terms

        *  Boondux  must  abandon  its  current  USPTO
        application.  Ducks Unlimited will agree not to
        oppose  a  trademark  application  for  the  altered
        Boondux logo.

        *  The  parties  will  enter  into  a  written  co-
        existence  agreement  that  acknowledges  Sutton's
        creative  efforts  in  generating  the  original
        Boondux  logo  but  recognizes  that  logo  as  a
        derivative of the DU Duck Head.  DU will covenant
        not to sue over any copyright claim arising from
        the altered logo as a further derivative.

        *  The parties will tender a consent judgment to
        the Court that prohibits any further use of the
        original Boondux logo beyond the sale of Boondux
        current inventory.

(Exhibit 1.)  On November 3, 2015, Boondux sent Ducks Unlimited

a  letter  addressing  the  October  12  proposal  and  setting  forth

additional  proposed  settlement  terms.   In  addition  to  offering

to  revise  the  Boondux  logo  in  several  specific  ways,  Boondux's

letter proposed the following terms:

    1 – Royalties.

    * Boondux will provide current inventory numbers and
    may sell out the current inventory of original logo
    items at an 8% royalty.

    * Boondux will pay a 8% royalty on past sales (to be
    paid within 60 days of execution of the settlement).

    2 – Other Terms.

> \* Boondux will abandon its current USPTO application. Ducks Unlimited will agree not to oppose a trademark application for the altered Boondux logo.
>
> \* The parties will enter into a written co-existence agreement that acknowledges Sutton's creative efforts in generating the original Boondux logo.
>
> \* DU will covenant not to sue over any copyright, trademark, dilution or other claim arising from the altered logo.
>
> \* The parties will tender a consent judgment to the Court that prohibits any further use of the original Boondux logo beyond the sale of Boondux current inventory.

(ECF No. 65-2.)

On November 10, 2015, counsel for Ducks Unlimited, Ms. DeJaco, telephoned counsel for Boondux, Mr. Primeaux. During the telephone conversation, Ms. DeJaco informed Mr. Primeaux that Ducks Unlimited would agree to Boondux's proposed logo revisions and the proposed eight percent royalty rate. (Decl. of Lisa DeJaco, ECF No. 71-1, ¶ 6; ECF No. 65-1, ¶ 6.) As to the remaining terms of Boondux's November 3 offer, Ms. DeJaco indicated that she would prepare a draft settlement agreement including the agreed-upon terms. (ECF No. 65-1, ¶ 6.) In her declaration, Ms. DeJaco states that "[w]hen [she] spoke to Mr. Primeaux by phone on November 10, 2015, and advised that Ducks Unlimited would agree to the revised Boondux Mark and the 8

percent royalty rate, *the parties had already agreed to the remaining terms of the settlement*, I thus indicated Ducks Unlimited's agreement to the only terms not previously accepted." (ECF No. 71-1, ¶ 6.) (emphasis added). However, Mr. Primeaux in his declaration states that he "did not believe the parties had reached a settlement agreement as of November 10, 2015," because "Ducks Unlimited had not accepted all of Boondux's terms in the November 3, 2015 offer, and [the parties] intended to continue negotiating the remaining terms by exchanging drafts of potential settlement agreements." (ECF No. 65-1, ¶ 6.)

Also during their November 10 telephone conversation, counsel for the parties discussed approaching the court and requesting a further extension of the deadlines in the scheduling order. Boondux agreed to the extension of all but one of the proposed deadlines. (ECF No. 65-1, ¶ 6.) Following this telephone conversation, Mr. Primeaux emailed Ms. DeJaco to follow up. In that email, Mr. Primeaux stated as follows:

> Thanks for the call with the good news on settlement progress. I wanted to let you know that we are filing a very short motion with regard to the one deadline (Copyright Expert) where we have disagreement. Hopefully, as you stated in our phone conversation today, by the time the Court goes to deal with that issue; we will be able to report that we are settled. However, we want to have our position in writing

before the Court in case the settlement talks go
south.

(ECF No. 65-3.)   Ms. DeJaco responded: "I would have expected
nothing else from you Russel.   Thanks for the heads-up."   (Id.)
Her response did not address Mr. Primeaux's comment that the
settlement discussions could "go south."

On November 10, Ducks Unlimited filed a motion to revise
the scheduling order.   In this motion, Ducks Unlimited stated
that "[a]lthough the parties remain engaged in discussions about
a resolution, the parties concur that the forward progress of
this matter should resume at this time."   Ducks Unlimited
further stated that "[g]ood cause exists for the extension of
the deadlines as the parties are seeking resolution to the
litigation.   The parties believe that their continued, good
faith efforts to resolve the matter extrajudicially are an
efficient use of the parties' and the Court's resources that
should be encouraged and for which allowances should be made."
(ECF No. 52.)   Between November 10 and November 18, 2015, the
parties had no further correspondence regarding settlement.
(ECF No. 65-1, ¶ 8.)

On November 18, 2015, the district judge held a telephonic
status conference to discuss the motion and the remaining
deadlines.   (ECF No. 56.)   During this conference, the district

judge asked Ms. DeJaco about the progress of the parties'
settlement discussions. Ms. DeJaco responded as follows:

> I'm pleased to tell you, since we filed the motion, I
> think we have made very good progress and we have an
> agreement in principle. . . . We have some terms we
> need to work out though. We wanted to go ahead and
> get this new scheduling order in place because we
> recognize we've taken a few months of our own accord
> and sort of put things on hold in order to try to get
> the case resolved. We felt that we needed to respect
> the Court's time and maybe clear the previous
> schedule. It's certainly not something we will - we
> would be able to follow in the event that we can't
> resolve the case. So, we wanted to go ahead and bring
> this motion to Your Honor's attention, get a new
> schedule in place. If we're going to get this case
> resolved - I think Russel will agree with me we're
> very hopeful that we will - it will be within the next
> few weeks. We'll be able to let you know soon if the
> case can come off the list entirely. . . . We have
> made very good strides in the last few weeks, and we
> are very optimistic.

(ECF No. 61.) Counsel for Boondux did not speak about the
progress of the settlement negotiations during this conference.

On December 1, 2015, Ducks Unlimited emailed Boondux a
draft settlement agreement. In that email, Ms. DeJaco stated:

> Attached you'll find the draft settlement agreement
> for our Boondux matter. Please do note that this is
> subject to final approval by [Ducks Unlimited] – the
> in-house counsel has reviewed it but it hasn't gone to
> the CEO yet, so it's possible that we might have other
> changes. However, I didn't want to take any longer to
> get it to you. Also, you may have suggestions for
> revisions we should work through before we take it to
> the signing authority. You'll see a couple of
> comments from me in the margins. Your thoughts are
> welcomed.

(ECF No. 65-4.) Among other terms, the draft settlement agreement included the following provisions:

> G. While the Boondux logo constitutes a derivative of the Duck Head Logo, Sutton is the author of the Boondux Logo, and it is the result of Sutton's creative efforts.
>
> 5. . . . One hundred and eight (180) days after the Effective Date of this Agreement, in the event that any merchandise marked with the Boondux Logo remains in inventory, Sutton and/or Boondux will cease any advertising or order fulfillment as to that merchandise and destroy any unsold products.
>
> 9. <u>Withdrawal of Trademark Application/ Consent to Future Application.</u> Within one (1) business day of the entry of the Agreed Order, Sutton will withdraw the Boondux Logo trademark application from the USPTO. No sooner than one hundred and eighty (180) days after the Effective Date of the Agreement, and only upon full payment of past and future royalties as set forth in Paragraphs 2 and 4 above, Boondux or Sutton may file an application to register the Revised Boondux Logo.

(ECF No. 65-5.) Boondux did not respond to Duck Unlimited's email until January 15, 2016. In his response email to Ducks Unlimited, Mr. Primeaux stated: "After seeing all the provisions that were in the formal settlement draft, my client has decided not to settle. Consequently, we will not be making any counterproposals as to the provisions in the formal settlement agreement." (ECF No. 65-6.)

Ducks Unlimited subsequently filed the instant motion on January 25, 2016. Ducks Unlimited asserts that the parties reached an oral settlement agreement during their discussions that took place on and before November 10, because the parties reached an agreement as to all material terms – specifically, the abandonment of the disputed logo, approval of a substitute logo, and the royalty rate to be applied to past and present sales of merchandise with the disputed logo. In its response in opposition, Boondux argues that Ducks Unlimited has provided no evidence showing the existence of an enforceable oral settlement agreement. Additionally, Boondux contends that the communications between the parties both before and after November 10 regarding settlement demonstrate that the parties, in fact, did not reach an agreement. In its reply, Ducks Unlimited argues that the draft settlement agreement it emailed to Boondux on December 1 was not a counteroffer, but rather "was an attempt to capture all of the terms on which the parties had already agreed, and to fill in the gaps with respect to practical implications of those terms." Ducks Unlimited claims that the additional provisions in the December 1 draft were non-material terms that were not intended in any way to alter the oral agreement already reached by the parties.

## II.  PROPOSED CONCLUSIONS OF LAW

"'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" Delgado v. UHS Lakeside, LLC, No. 11-3111, 2013 WL 4648294, at *5 (W.D. Tenn. Aug. 29, 2013) (quoting Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992)).  However, before enforcing a settlement agreement, the court "must conclude that the parties have reached an agreement on all material terms." Bobonik v. Medina Gen. Hosp., 126 F. App'x 270, 273 (6th Cir. 2005) (citing Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988)); see also RE/MAX Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 645-46 (6th Cir. 2001).  "A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'"[2] Cogent Solutions Group, LLC v. Hyalogic, LLC, 712 F.3d 305, 209 (6th Cir. 2013) (quoting Bamerilease, 958 F.2d at 152).  Under Tennessee law, contracts may be oral or written. Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 22 (6th Cir. 2003) (citing Johnson v. Cent. Nat'l Ins. Co., 356 S.W.2d 277, 281 (Tenn. 1962)).  In order for a written or oral contract to be enforceable under Tennessee law, "'it must result

---

[2]Both parties rely on Tennessee contract law in support of their arguments regarding the enforceability of the settlement.

from a meeting of the minds of the parties in mutual assent to the terms.'" _Delgado_, 2013 WL 4648294, at *6 (quoting _Johnson_, 356 S.W.2d at 281). To determine whether there was a meeting of the minds, "'courts use an objective standard based on the manifestations of the parties.'" _Broadnax v. Quince Nursing &_ _Rehab. Ctr., LLC_, No. W2001-00819-COA-R3-CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009) (quoting _T.R. Mills_ _Contractors, Inc. v. WRH Enterprises, LLC_, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)). In other words, courts "must determine whether a reasonable onlooker, based upon the parties' outward manifestations," would conclude that the parties agreed to be bound by the terms of the agreement. _Moody Realty Co. v._ _Huestis_, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007). The party seeking to enforce an oral contract has the burden of proving mutual assent to the terms of the agreement. _Sigmon v._ _Appalachian Coal Properties, Inc._, 400 F. App'x 43, 48 (6th Cir. 2010) (citing _Castelli v. Lien_, 910 S.W.2d 420, 426–27 (Tenn. Ct. App. 1995)).

Here, Ducks Unlimited argues that the parties reached an oral agreement on all material terms of the settlement and that the court should enforce those agreed-upon terms. In its

-12-

motion, Ducks Unlimited asserts that the parties agreed upon the following material terms:

1. the parties agreed that Boondux would cease use of the Boondux logo mark in dispute;

2. a revised Boondux logo mark was designed by Defendants and approved by Ducks Unlimited;

3. the parties agreed to the royalty rate that Boondux would pay to Ducks Unlimited in connection with all sales of merchandise bearing the mark in dispute;

4. Boondux would drop its application to register a federal trademark in the mark in dispute; and

5. Ducks Unlimited would agree not to oppose an application to register the revised Boondux logo mark and covenant not to sue for copyright infringement, trademark infringement, or trademark dilution arising from the revised Boondux logo mark.

According to Ms. DeJaco, a final settlement agreement was reached between the parties during her November 10, 2015 phone call with Mr. Primeaux, when she accepted the "remaining terms" of Boondux's settlement offer. As mentioned previously, Ms. DeJaco states in her declaration that "the parties had already agreed to the remaining terms of the settlement" before that phone call, and therefore, she "indicated Ducks Unlimited's agreement to the only terms not previously accepted" during the call. (ECF No. 71-1, ¶ 6.) She further declares that during the conversation, she and Mr. Primeaux "specifically addressed the inclusion of a reference to the Boondux marks as 'derivative' of the Ducks Unlimited mark," and that "counsel for

both parties agreed that the verbiage might require some word-smithing, but this issue was minor and should not derail the settlement in light of the agreement between the parties on the major terms." (Id. at ¶ 7.) Ducks Unlimited claims that the December 1 draft settlement agreement sent by Ms. DeJaco to Mr. Primeaux reflected all of the material terms the parties had already agreed to – "the abandonment of the disputed mark, the approval of a substitute Boondux logo, and the royalty rate to be applied to past and present sales of merchandise with the disputed logo." (ECF No. 59-1.) Ducks Unlimited contends that any additional provisions included in the draft were "non-material terms to make the material terms meaningful and effective." (ECF No. 71.) (emphasis in original).

In contrast to Ducks Unlimited's assertion, Mr. Primeaux states in his declaration, and reiterated in his testimony at the hearing, that the parties did not reach a settlement agreement during the November 10 phone call. He explains as follows:

> Based on [Ms. DeJaco's] statements and Ducks
> Unlimited's actions, I did not believe the parties had
> reached a settlement agreement as of November 10,
> 2015. My belief was based on the fact that Ducks
> Unlimited had not accepted all of Boondux's terms in
> the November 3, 2015 offer, and we intended to
> continue negotiating the remaining terms by exchanging
> drafts of potential settlement agreements. My belief

was also based on the fact that Ducks Unlimited and
Boondux agreed to request that the Court extend the
deadlines in its scheduling order so that the parties
would not be prejudiced in their ability to prepare
for trial should our settlement negotiations fail. . .
. If we had reached an enforceable settlement
agreement, we would not have needed to extend the
scheduling deadlines. Therefore, I believe that both
parties anticipated that the settlement negotiations
could fail.

(ECF No. 65-1, ¶ 6.) Mr. Primeaux further states that the

December 1 draft settlement agreement he received from Ducks

Unlimited "changed and added material terms to Boondux's

November 3, 2015 offer that were unacceptable to Boondux." He

specifies that among other changes, "[t]he draft settlement

agreement inserted a new term, stating that the Boondux Mark

'constitutes a derivative of the Duck Head Logo,' which was

contrary to Boondux's offer that any agreement between the

parties acknowledge Boondux's creative efforts in generating the

Boondux Mark." (Id. at ¶ 12.) At the hearing, Mr. Primeaux

explained at length the legal consequences of conceding that a

work is derivative, and why he believes that whether a client's

logo is classified as "derivative" is a material term in any

settlement agreement. (ECF No. 74, pp. 52-54.) He testified

that at no time during the settlement negotiations did he convey

to Ms. DeJaco that it would be acceptable to Boondux to

acknowledge that the Boondux logo was derivative of the Ducks

Unlimited logo.  (Id. at p. 52.)  He addressed Ms. DeJaco's

declaration specifically as follows:

> And I think in Ms. DeJaco's declaration she talks
> about either that she told me that it was going to be
> stated that it was derivative or that I agreed that it
> would be derivative.  I don't recall that and I would
> not have agreed and had not previously agreed and
> still do not agree to having a provision wherein my
> client would agree that the Boondux logo was a
> derivative of the Ducks Unlimited logo.

(Id. at p. 59.)  Ms. DeJaco did not refute Mr. Primeaux's

testimony at the hearing; rather, she reiterated during argument

that any term addressing whether Boondux's logo was derivative

was non-material to the settlement agreement between the

parties.

Applying an objective standard to the evidence in the

record as a whole, the court finds that there was no meeting of

the minds between the parties as to all material terms.  The

court is convinced by Mr. Primeaux's testimony that the

provision acknowledging Boondux's logo as derivative was a

material term upon which the parties had not reached an

agreement.  Additionally, Ducks Unlimited's December 1 draft

settlement agreement evidences a lack of an oral agreement

between the parties.  Specifically, Ducks Unlimited's December 1

draft agreement altered several material terms in Boondux's

November 3 offer, which undermines Ducks Unlimited's contention

that an oral agreement had been previously reached as to all material terms. For example, Boondux's November 3 offer provided that Boondux "may sell out the current inventory of original logo items at an 8% royalty." However, Ducks Unlimited's December 1 draft stated that Boondux must destroy any unsold products that remain in inventory 180 days after the effective date of the settlement agreement. Furthermore, Boondux's November 3 offer provided that Boondux would abandon its current trademark application. While Ducks Unlimited's December 1 draft mirrored this term, it also stated that Boondux could not file a trademark application to register the revised Boondux logo until at least 180 days after the effective date of the agreement and "only upon full payment of past and future royalties." Based on the entire record, the court finds that these terms were material to the agreement between the parties. Because it does not appear that the parties reached an agreement as to all material terms, enforcement of the purported settlement agreement is not warranted in this case.[3] See

_____

[3]Ducks Unlimited presented the testimony of Mr. King, Ducks Unlimited's in-house counsel, at the hearing on the motion in support of its position. Mr. King testified that he believed that Ducks Unlimited had accepted Boondux's November 3 offer. (ECF No. 74, p. 30.) He also testified that the only material terms of the agreement in his opinion were the logo, the royalty rate, and Boondux's pending trademark application. (Id. at p.

<u>Revolution, Inc. v. Starpower, Inc.</u>, No. 07-13618, 2009 WL 2488105, at *2 (E.D. Mich. Aug. 11, 2009) (denying motion to enforce settlement agreement because the parties had not reached an agreement on all material terms).

The court is further convinced of the lack of an agreement based on the outward manifestations of the parties' counsel subsequent to their November 10 conversation. For example, in the email Mr. Primeaux sent Ms. DeJaco immediately after the November 10 conversation, he referenced the "settlement progress" and stated that Boondux wanted to have its "position in writing before the Court *in case the settlement talks go south*." (ECF No. 65-3.) (emphasis added). Ms. DeJaco's response did not question Mr. Primeaux's concern that the settlement talks might "go south." That same day, Ms. DeJaco filed a motion with the court requesting a revision of the scheduling order. In that motion, Ms. DeJaco stated that "[a]lthough the parties *remain engaged in discussions about a resolution*, the parties concur that the forward progress of this matter should resume at this time." She further stated that

---

31.) However, Mr. King also testified that he never engaged in settlement discussions with Mr. Primeaux or any other representative for Boondux. (<u>Id.</u> at pp. 33-34.) All settlement discussions on behalf of Ducks Unlimited were conducted by Ms. DeJaco.

"[g]ood cause exists for the extension of the deadlines as *the parties are seeking resolution to the litigation*. The parties believe that their continued, good faith efforts to resolve the matter extrajudicially are an efficient use of the parties' and the Court's resources that should be encouraged and for which allowances should be made." (ECF No. 52.) (emphasis added). Additionally, during the November 18 status conference, Ms. DeJaco stated:

> I'm pleased to tell you, since we filed the motion, I
> think we have made very good progress and we have an
> agreement in principle. . . . We have some terms we
> need to work out though. . . . *If we're going to get
> this case resolved* - I think Russel will agree with me
> we're very hopeful that we will - it will be within
> the next few weeks. We'll be able to let you know
> soon if the case can come off the list entirely. . . .
> *We have made very good strides in the last few weeks,
> and we are very optimistic.*

(ECF No. 61.) (emphasis added). The conduct of the parties following the November 10 phone call strongly suggests that the parties were still in settlement negotiations and had not yet reached a final agreement. Compare RE/MAX Int'l, 271 F.3d at 646 (enforcing oral settlement agreement and reasoning that "the objective acts of the parties reflect that an agreement had been reached"). After reviewing the entire record, the court finds that Ducks Unlimited has not met its burden of demonstrating that an oral agreement to settle this case was reached between

the parties.[4]    Therefore, it is recommended that Ducks Unlimited's motion to enforce the settlement agreement be denied.

As a final matter, Ducks Unlimited requests in the alternative that the court order the parties to attend a settlement conference mediated by the district judge or by a designated magistrate judge.    Ducks Unlimited also moves the court to schedule an in-person scheduling conference.    The undersigned believes these matters fall within the discretion of the presiding district judge, and therefore the undersigned offers no recommendation on this part of the motion.

### III.    CONCLUSION

---

[4]Ducks Unlimited argues that the present dispute is factually similar to the scenario addressed by the court in <u>Remark, LLC v. Adell Broadcasting Corp.</u>, 702 F.3d 280 (6th Cir. 2012).  In that case, the Sixth Circuit affirmed the lower court's determination that Adell had breached the settlement agreement between it and Remark, despite Adell's contention that the settlement agreement was not enforceable because the final version had not been signed.  The court discussed the communications between the parties and reasoned that, "[t]aken together, the e-mails conveyed an objective meeting of the minds as to each of the material terms, and as such they meet all of the requirements of an enforceable contract under Michigan law."  <u>Id.</u> at 283.  With regard to the case at hand, as the court has already noted, the communications between the parties that are before the court do not indicate that a meeting of the minds occurred.  Therefore, <u>Remark</u> is distinguishable.

For the reasons above, it is recommended that Ducks Unlimited's motion be denied.

Respectfully submitted,

<div style="margin-left: 40%;">

s/ Tu M. Pham
_____
TU M. PHAM
United States Magistrate Judge

April 5, 2016
_____
Date

</div>

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**