IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DUCKS UNLIMITED, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14-cv-2885-SHM-tmp |
| ) | |
| BOONDUX, LLC and CALEB ) | |
| SUTTON, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## ORDER

Before the Court is Plaintiff Ducks Unlimited, Inc.'s ("Ducks Unlimited") Motion for Attorney's Fees, Expenses, and Costs, filed on September 21, 2017. (ECF No. 169.) Defendants Boondux, LLC and Caleb Sutton (collectively, "Defendants") responded on October 16, 2017. (ECF No. 174.) Ducks Unlimited filed supplemental briefing on November 21, 2017. (ECF No. 179.) Defendants responded on December 8, 2017. (ECF No. 181.)

Also before the Court is Defendants' Submission of Supplemental Accounting, filed on December 8, 2017. (ECF Nos. 182-83.) Ducks Unlimited responded on December 15, 2017. (ECF No. 183.)

For the following reasons, Ducks Unlimited's Motion for Attorney's Fees, Expenses, and Costs is GRANTED in part and

DENIED in part. Ducks Unlimited is entitled to $10,845.29 in
taxable costs and is not entitled to attorney's fees or non-
taxable costs. Ducks Unlimited is awarded $13,371.85 for profits
arising from trademark infringement, in addition to damages
awarded in the Court's August 18, 2017 Memorandum Opinion
Findings of Fact and Conclusions of Law (ECF No. 163) and in the
Court's September 8, 2017 Order (ECF No. 166).

## I.    Background

This Order includes an abbreviated background beginning from
the Court's August 18, 2017 Memorandum Opinion Findings of Fact
and Conclusions of Law (ECF No. 163). A complete background can
be found in that Memorandum Opinion.

On August 18, 2017, the Court found Defendants liable for
copyright infringement, trademark infringement, and false
designation of origin or sponsorship. (ECF No. 163.) Defendants
were enjoined from further using the Boondux Logo in commerce.
(Id.) Ducks Unlimited was awarded $258,919.04 on its prevailing
claims. (Id.) Ducks Unlimited was also ordered to elect
statutory damages or profits on its copyright infringement claim.
(Id.)

On August 25, 2017, Ducks Unlimited filed two notices.
First is Ducks Unlimited's Notice of Election of an Accounting of

Defendants' Infringing Sales, asking that Defendants provide sales associated with their trademark infringement from their last accounting until the Court's August 18, 2017 Memorandum Opinion. (ECF No. 164.) Second is Ducks Unlimited's Notice of Election Pursuant to 15 U.S.C. § 504 to Accept Statutory Damages for its Copyright Infringement Claim in lieu of Profits, seeking $30,000.00 in statutory damages for copyright infringement. (ECF No. 165.)

On September 8, 2017, based on Ducks Unlimited's second Notice of Election, the Court awarded Ducks Unlimited statutory damages for copyright infringement in the amount of $30,000.00. (ECF No. 166.) Those damages were in addition to damages awarded in the Court's August 18, 2017 Memorandum Opinion (ECF No. 163). (Id.)

On September 21, 2017, Ducks Unlimited filed its Motion for Attorney's Fees, Expenses, and Costs. (ECF No. 169.) Ducks Unlimited seeks $10,845.29 in taxable costs, $5,515.29 in non-taxable costs, and $380,885.00 in attorney's fees on its copyright infringement claim and related claims. (Id.) Defendants responded on October 16, 2017. (ECF No. 174.)

On November 3, 2017, Ducks Unlimited filed an Unopposed Motion to Set Schedule for Production of Defendants' Accounting, requiring Defendants to provide, by December 8, 2017, "an

accounting of the number of units sold and gross revenue of items bearing the Boondux Logo from the date of its last production of sales figures in this case through August 18, 2017." (ECF No. 176.) The Court granted the unopposed motion the same day. (ECF No. 177.)

On November 9, 2017, the Court entered an Order for Supplemental Briefing on Attorney's Fees, requiring Ducks Unlimited to file supplemental briefing addressing whether this matter is an "exceptional case" under the Lanham Act to justify attorney's fees on its trademark claims or file supplemental briefing that limits its fees, expenses, and costs to its copyright claims. (ECF No. 178.) Ducks Unlimited filed its supplemental brief on November 21, 2017. (ECF No. 179.) Defendants responded on December 8, 2017. (ECF No. 181.)

On December 8, 2017, Defendants filed their accounting of profits from products bearing the Boondux Logo from the date of their last production of sales figures through August 18, 2017. (ECF No. 182.) Defendants assert that sales amounted to $13,371.85, and that costs associated with those sales amounted to $34,550.84. (Id.) Defendants seek a decrease in Ducks Unlimited's profit award of $258,919.04 to $237,740.05. (Id.) Ducks Unlimited responded on December 1, 2017. (ECF No. 183.)

## II.  Legal Standard

### A. Attorney's Fees

#### 1. Federal Rule of Civil Procedure 54(d)(2)

Federal Rule of Civil Procedure 54(d)(2)(B) governs motions for attorney's fees:

> Unless a statute or a court order provides otherwise, the motion must:
>
> (i)   be filed no later than 14 days after the entry of judgment;
>
> (ii)  specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv)  disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

#### 2. Local Rule 54.1(b) Requirements

Local Rule 54.1(b) supplements the rules governing motions for attorney's fees:

> Consistent with the provision in [Rule] 54(d)(2)(B) permitting variation in the time for filing a motion for attorney's fees, a motion for an award of attorney's fees and related non-taxable expenses may be filed within 14 days from the date the Court's judgment becomes final.  In addition to the requirements of [Rule] 54(d)(2), a motion for an award of attorney's fees shall be supported by a memorandum setting forth the authority of the Court to make such an award, why the movant should be considered the

prevailing party, if such a consideration is required for the award, and any other factors that the Court should consider in making the award. The motion shall also be supported by:

(1) an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect of the case, and the rate customarily charged by counsel for such work; and,

(2) an affidavit or declaration of another attorney in the community, who is not otherwise involved with the case, setting out the prevailing rate charged in the community for similar services. Within eleven days after service of the motion, the party against whom the award is requested shall respond with any objections thereto and an accompanying memorandum setting forth why the award is excessive, unwarranted, or unjust.

### 3. Copyright Infringement Attorney's Fees

Under the Copyright Act, it is within the court's discretion to award reasonable fees to the "prevailing party." 17 U.S.C. § 505. The court may not award fees as a matter of course. Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). An award must further the purposes of the Copyright Act. Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1983-85 (2016).

To determine whether to award attorney's fees, the deciding court must "give substantial weight to the objective reasonableness of the losing party's position," and assess nonexclusive factors, such as "frivolousness, motivation, . . .

and the need in particular circumstances to advance

considerations of compensation and deterrence." Id.

### 4. Trademark Infringement Attorney's Fees

Title 15 U.S.C. § 1117(a) provides that "[t]he court in

exceptional cases may award reasonable attorney fees to the

prevailing party." The statute does not define "exceptional,"

but the Sixth Circuit has held that a case is not exceptional

unless "the infringement was malicious, fraudulent, willful, or

deliberate." Hindu Incense v. Meadows, 692 F.2d 1048, 1051 (6th

Cir. 1982).

"Trial judges have considerable discretion in [deciding]

§ 1117 motions for attorney fees." Sovereign Order of Saint John

of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1244 (6th Cir. 1997).

A case cannot be exceptional "if there is the slightest doubt" as

to whether the defendant acted with the requisite intent. Hindu

Incense, 692 F.2d at 1052 (citing O'Brien Int'l, Inc. v. Mitch,

209 USPQ 212, 221 (N.D. Cal. 1980)).

Octane Fitness, LLC v. ICON Health & Fitness, Inc. also

provides guidance. 134 S. Ct. 1749 (2014). In Octane Fitness,

the Supreme Court clarified the meaning of "exceptional" under

the Patent Act's fee-shifting provision, 35 U.S.C. § 285. Id. at

1751. Thirty-five U.S.C. § 285 is identical to 15 U.S.C. §

1117(a). Compare 15 U.S.C. § 1117(a) with 35 U.S.C. § 285.

Statutes using the same language are interpreted consistently. See United States v. Hynes, 467 F.3d 951, 967 (6th Cir. 2006) ("The Supreme Court has held that statutes containing similar language and having a similar underlying purpose should be interpreted consistently.") (citing Northcross v. Bd. of Educ. of Memphis City Schs., 412 U.S. 427, 428 (1973)); see also Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 313, 317-18 (6th Cir. 2015) (remanding to district court and instructing that identical statutes such as the Patent Shifting Provision and the Lanham Act should be interpreted alike).

In Octane Fitness, the Supreme Court held that, applying the ordinary meaning of "exceptional," fees should be awarded only in a case "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 1756. The Supreme Court did not state a "precise rule or formula for making these determinations," and said that district courts have discretion to make exceptional case determinations on a case-by-case basis. Id. at 1756. The Court provided a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and

deterrence.'" Id. at 1756 n.6 (internal quotations omitted). The Court emphasized that an exceptional case is "rare." Id. at 1756.

**B. Costs and Expenses**

"Unless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The categories of taxable costs include clerk and marshal fees, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," witness and printing fees, copying fees for materials necessarily obtained for use in the case, docket fees, and certain expert and interpretation fees. 28 U.S.C. § 1920.

**C. Remedies – Trademark Infringement Profits**

"In assessing profits [associated with trademark infringement] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

## III. Analysis

### A. Attorney's Fees

#### 1. Copyright Infringement Attorney's Fees

##### a. Prevailing Party

The parties do not dispute that Ducks Unlimited is the prevailing party under the attorney's fee analysis. The Court has found that Defendants infringed Ducks Unlimited's copyright and trademark. (ECF No. 163.)

##### b. Objective Reasonableness & Frivolousness

Ducks Unlimited argues that Defendants' claims and defenses were frivolous and objectively unreasonable, because Defendant Sutton claimed he did not have access to the Ducks Unlimited Duck Head Logo and the Court found his testimony lacked credibility. (ECF No. 169-1 at 5201.)[1] Ducks Unlimited contends that Defendants' claim that its logo was not substantially similar to Ducks Unlimited's logo was objectively unreasonable because the Court found that Defendants' logo "copies elements of the DU Logo that are entitled to copyright protection." (Id. (citing ECF No. 163 at 5114).) Defendants argue that Ducks Unlimited improperly conflates objective reasonableness with ultimate liability. (ECF No. 174 at 5458.) Whether Defendants were ultimately liable does

---

[1] Unless otherwise noted, citations to the record refer to the PageID number.

not make their claims and defenses objectively unreasonable.
(Id.)

"When [one party] has advanced a reasonable, yet
unsuccessful position, an award of attorney fees to the
prevailing [party] generally does not promote the purposes of the
Copyright Act." Bridgeport Music, Inc. v. Diamond Time, Ltd.,
371 F.3d 883, 895 (6th Cir. 2004).  Claims under the Copyright
Act are "objectively unreasonable if '[they are] clearly without
merit or otherwise patently devoid of legal or factual basis,'"
and are "not objectively unreasonable if there is a 'reasonable
possibility' that the court would reach a different outcome on
the merits of the claim." Prunty v. Vivendi, 195 F. Supp. 3d
107, 112 (D.D.C. 2016) (quoting ZilYen, Inc. v. Rubber Mfrs.
Ass'n, 958 F.Supp.2d 215, 218 (D.D.C. 2013)); see Nat'l Bus. Dev.
Servs., Inc. v. Am. Credit Educ. & Consulting Inc., 299 F. App'x
509, 513 (6th Cir. 2008) (affirming fees where claim was
"frivolous, unreasonable, and deserving of deterrent action"
because plaintiff "filed a complaint with no genuine idea as to
whether a claim existed and, in failing to obtain the deposit
materials, had exhibited a general indifference to the merits of
the claim") (internal quotation marks omitted); Heritage Custom
Homes, LLC, No. 2:13-cv-779, 2015 WL 4639654, at *5–*6 (S.D. Ohio
Aug. 3, 2015) (awarding fees and finding that a copyright lawsuit

was objectively unreasonable when the plaintiff pursued it for over a year without having the certificate of registration for the copyrights at issue).

Defendants' claims and defenses were not objectively unreasonable. Defendants first sought to undermine Ducks Unlimited's position that Defendant Sutton had access to Ducks Unlimited's logo. (ECF No. 163 at 5108-09.) "Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy plaintiff's work." Murray Hill Publ'ns., Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 316 (6th Cir. 2004). "[A]ccess may not be inferred through mere speculation or conjecture." Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir. 1999) (quotation marks omitted). The legal basis for Defendants' claim was not objectively unreasonable. Defendants argued that Ducks Unlimited "did not prove that Mr. Sutton was aware prior to his creation of the Boondux Mark." (ECF No. 161 at 5029.) Defendants argued that the possibility Sutton could have seen Ducks Unlimited's Logo did not mean Sutton had actually seen it. (Id. at 5029-30.)

Courts in this Circuit assess two forms of circumstantial evidence to demonstrate "reasonable access" when there is no direct evidence of access: "'(1) a particular chain of events establishing defendant's access to plaintiff's work, or (2)

plaintiff's work has been widely disseminated.'" Design Basics,
L.L.C. v. DeShano Companies, Inc., No. 10-14419, 2012 WL 4321313,
at *13 (E.D. Mich. Sept. 21, 2012) (quoting King Records, Inc. v.
Bennett, 438 F.Supp.2d 812, 846 (M.D. Tenn. 2006)).  That is a
factual inquiry.  Plaintiff's factual allegations must rise above
the level of bald speculation.  Lyles v. Capital-EMI Music Inc.,
No. 2:12-CV-00751, 2013 WL 6000991, at *3 (S.D. Ohio Nov. 12,
2013); see Martinez v. McGraw, No. 3:08-0738, 2009 WL 2447611
(M.D. Tenn. Aug. 10, 2009) (finding no access where plaintiff
claimed that defendants (one of whom was country music singer Tim
McGraw) gained access to plaintiff's songs because McGraw used
the same recording studio and worked with the same musical
personnel as a recording artist who had recorded a song that used
lyrics from plaintiff's copyrighted collection).  Although
Defendants' factual claims did not succeed, their argument that
Ducks Unlimited's evidence did not rise above the level of
speculation was not objectively unreasonable.

    Defendants also argued that the logos were not substantially
similar.  Defendants "contend[ed] that, after filtering out the
unprotectible elements, any protectible elements that remain in
the DU Logo are not substantially similar to the Boondux Logo."
(ECF No. 163 at 5112.)  The Sixth Circuit has instructed that, to
perform a proper substantial-similarity analysis, courts must

first filter the unoriginal, unprotectible elements out of the original work and then assess whether the allegedly infringing work is substantially similar to any remaining protectible elements in the original.  See Kohus v. Mariol, 328 F.3d 848, 856-56 (6th Cir. 2003).  Defendants' argument that under this analysis the logos were not substantially similar was not objectively unreasonable.

The case law available at the time of the Defendant's contentions was suggestive of the ultimate result, but not so overwhelming or direct as to render Defendants' positions unreasonable.  See Specific Software Solutions, LLC v. Institute of WorkComp Advisors, LLC, 615 F.Supp.2d 708, 716 n.7 (M.D. Tenn. 2009) (claim not objectively unreasonable where there was no controlling Sixth Circuit precedent and only "scant case law" on the issue in dispute).  Defendants' arguments were reasonable, although unsuccessful.  This factor weighs against awarding Ducks Unlimited's attorney's fees and costs.  See Bridgeport Music, 520 F.3d at 593 (It is a "rare instance[]in which a district court orders a party to pay attorneys' fees and costs in spite of finding that the party advanced an objectively reasonable legal claim or theory.")

### c. Motivation

"In considering whether to award attorneys' fees, courts consider the motivations of both parties in pursuing the litigation." DC Comics v. Pac. Pictures Corp., No. 2:10-CV-03633-ODW, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013).

Ducks Unlimited argues that Defendants' motivation was improper because "their sole motivation was commercial and to make a profit from the use of the Boondux Logo." (ECF No. 169-1 at 5202.) Courts have found improper motive where a defendant directly copies a copyrighted work for profit. Cf. Thoroughbred Software Int'l, Inc. v. Dice Corp., 529 F. Supp. 2d 800, 803 (E.D. Mich. 2007) (finding no improper motive where defendants directly copied elements of copyrighted software on customers' computers, but did not activate any modules for which defendants had no licenses and did not profit from the infringement); Balsley v. LFP, Inc., No. 1:08 CV 491, 2011 WL 1303738, at *5 (N.D. Ohio Mar. 31, 2011), aff'd, 691 F.3d 747 (6th Cir. 2012) (finding improper motive where defendants profited from directly copying and publishing a copyrighted photograph).

Ducks Unlimited has not established that Defendants directly copied Ducks Unlimited's logo as direct copying has been identified in the cases. Although Defendants' motive was to

continue profiting from the Boondux Logo, that motivation alone
does not support an attorney's fee award to Ducks Unlimited.

### d. Compensation and Deterrence

Considerations of compensation and deterrence under the
Copyright Act are inextricably intertwined with the
reasonableness or frivolousness of the parties' positions and
their motivations in litigating the dispute.  A party that
advances reasonable, good-faith positions should not be deterred
from doing so, even if ultimately unsuccessful, because such
claims or defenses help define the scope and limits of copyright
protection.  See Donald Frederick Evans and Associates, Inc. v.
Continental Homes, Inc., 785 F.2d 897, 916 (11th Cir. 1986)
(under § 505, "a losing party's good faith and the complexity of
the legal issues likely would justify a denial of fees to a
prevailing party" (internal quotations and citations omitted)).

Deterring future violations is a factor in awarding
attorney's fees.  Likely future violators include those who
should have investigated the possibility of infringement, but
failed to do so.  Balsley, 691 F.3d at 773.  Likely future
violators include those who willfully infringe.  See, e.g.,
Cable/Home Comm. Corp. v. Network Prods., Inc., 902 F.2d 829, 851
(11th Cir. 1990) (quoting Int'l Korwin Corp. v. Kowalczyk, 855
F.2d 375, 383 (7th Cir. 1988)) ("[W]hen the infringement is

willful, 'deterrence of future violations is a legitimate consideration' because 'defendants must not be able to sneer in the face of copyright owners and copyright laws.'"); <u>Harrison Music Corp. v. Tesfaye</u>, 293 F.Supp.2d 80, 84 (D.D.C. 2003) (awarding fees in part because defendant "deliberately refused to comply with copyright laws").

Some courts have held that willful copyright infringement requires a penalty that dissuades present or future infringers and furthers the national interest in maintaining "a legal system that encourages and rewards those who prevent copyright infringement." <u>See, e.g.</u>, <u>Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.</u>, 2009 WL 3423848 (E.D. Va. Oct. 16, 2009).

Other courts have held that, where injunctive relief has been awarded, a fee award is no longer necessary to deter future violations. <u>See, e.g.</u>, <u>Virtual Studios, Inc. v. Beaulieu Grp., LLC</u>, 987 F. Supp. 2d 769 (E.D. Tenn. 2013); <u>Bait Prods. Pty Ltd. v. Murray</u>, No. 8:13-CV-0169-T-33AEP, 2013 WL 4506408, at *7 (M.D. Fla. Aug. 23, 2013) (statutory damages coupled with the injunctive relief were a sufficient deterrent against any future wrongful conduct by defendant and others); <u>Under a Foot Plant, Co. v. Exterior Design, Inc.</u>, No. CV BPG-15-871, 2017 WL 3840260, at *3 (D. Md. Sept. 1, 2017) (same); <u>Compaq Computer Corp. v. Procom Tech., Inc.</u>, 908 F.Supp. 1409, 1428-29 (S.D. Tex. 1995).

Ducks Unlimited has been awarded statutory damages of
$30,000.00. (ECF No. 166.) Ducks Unlimited has also received a
permanent injunction against Defendants for future copyright and
trademark infringement. (ECF No. 163.) Ducks Unlimited now
seeks $380,885.00 in attorney's fees and $16,360.58 in costs and
expenses. (ECF No. 169-1 at 5213.) Attorney's fees more than
ten times greater than the damages awarded for copyright
infringement, in addition to a permanent injunction, would exceed
the amount necessary to deter future infringers.

Ducks Unlimited argues that compensation and deterrence
support a fee award because Defendants "infringed on Ducks
Unlimited's copyright in its Ducks Head Logo," "were fully aware
that Ducks Unlimited would pursue its attorneys' fees if it were
the prevailing party," and "chose to continue on with this
litigation, even after it appeared the parties had reached a
settlement over a year before trial . . . ." (ECF No. 169-1 at
5204.)

The parties' settlement discussions, which are typically
confidential to encourage candid negotiations, are not relevant
in determining whether compensation or deterrence favors a fee
award. See Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 506–
07 (4th Cir. 1994) (lower court abused its discretion by
considering prevailing defendant's refusal to settle). The

Court's ultimate conclusion that Defendants infringed Ducks Unlimited's copyright or that Ducks Unlimited included in its complaint a request for attorney's fees also has no effect on whether compensation or deterrence favors a fee award.

Ducks Unlimited contends that Defendant Sutton did not remove merchandise bearing the Boondux Logo from the market, although he "was fully aware of the copyright rights Ducks Unlimited was asserting, as well as the scope of protection afforded by a copyright, as he had discussed copyright protection with an attorney, sought copyright protection for the Boondux Logo, and actively policed the Boondux Logo." (ECF No. 169-1 at 5204.) Sutton's behavior is not inconsistent with deterring future violators. The Court has found that Defendants did not infringe Ducks Unlimited's copyright willfully. (ECF No. 163 at 5177.) The failure to remove merchandise was consistent with Defendants' legal position that the Boodux Logo did not infringe.

Ducks Unlimited also argues that deterrence favors attorney's fees because Defendants "appear to continue to utilize other logos that appear to be substantially similar to logos of other well-known companies. . . ." (ECF No. 169-1 at 5205.) Whether Defendants are infringing other logos is not properly before the Court. Ducks Unlimited does not contend that Defendants have continued to infringe the Ducks Unlimited Logo

following the Court's August 18, 2017 Order.  Defendants'
production of products unrelated to this litigation does not
affect future violators.

Ducks Unlimited contends that compensation favors attorney's
fees because Ducks Unlimited is a non-profit corporation.  (Id.)
Assessing the status of the parties does not further the purposes
of the Copyright Act and is not relevant to awarding fees.  See
Fogerty, 510 U.S. at 524 ("Entities which sue for copyright
infringement as plaintiffs can run the gamut from corporate
behemoths to starving artists."); see also MiTek Holdings, Inc.
v. Arce Eng'g Co., 198 F.3d 840, 843 (11th Cir. 1999)
("[D]istrict court[s] should consider not whether the losing
party can afford to pay the fees but whether the imposition of
fees will further the goals of the Copyright Act.").

Awards pursuant to Section 505 "should encourage the types
of lawsuits that promote" the Copyright Act's aims of
"encouraging and rewarding authors' creations while also enabling
others to build on that work."  Kirtsaeng, 136 S.Ct. at 1986.
Awarding fees to Ducks Unlimited in light of Defendants' non-
frivolous defenses and non-willful infringement would not further
the purposes of the Copyright Act.  Ducks Unlimited's request for
attorney's fees under Section 505 is DENIED.

## 2. Trademark Infringement Attorney's Fees

Ducks Unlimited argues that this is an exceptional case warranting attorney's fees under 15 U.S.C. § 1117. (ECF No. 179 at 5711.) Ducks Unlimited points to Defendants' allegedly "malicious, willful, fraudulent, and deliberate" acts. (Id.)

Defendants' arguments were not frivolous, their conduct was not unreasonable, and their motive was not improper. Defendants' motion for partial summary judgment was granted in part. (ECF No. 140.) Although Defendants' arguments at trial were ultimately unsuccessful, they were based on appropriate precedent within the meaning of § 1117(a). Defendants did not engage in vexatious conduct, assert groundless claims or defenses, or pursue their case in bad faith. "Considering the totality of the circumstances," this is not an "exceptional" case that "stands out from others with respect to the substantive strength of [the defendants'] litigating position (considering both the governing law and the facts of the case) [and the] . . . manner in which the case was litigated." Octane Fitness, 134 S. Ct. at 1756. Ducks Unlimited's motion for attorney's fees under § 1117(a) is DENIED.

**B. Costs and Expenses**

Ducks Unlimited seeks $10,845.29 in taxable costs and
$5,515.29 in non-taxable costs.  (ECF No. 169-1 at 5211-13.)  Its
non-taxable costs are expert witness fees.  Defendants contend
that Ducks Unlimited's costs are "excessive and should be
reduced."  (ECF No. 174 at 5456.)  "Defendants concede that Ducks
Unlimited is entitled to $10,845.29 in taxable costs" under 28
U.S.C. § 1920.  (<u>Id.</u> at 5476.)  Defendants dispute Ducks
Unlimited's entitlement to non-taxable costs because the case
does not merit an award of attorney's fees.  (<u>Id.</u> at 5477.)

Although the Copyright Act permits the recovery of "full
costs," there is a split of authority on whether that provision
is limited by 28 U.S.C. §§ 1821(b) and 1920.  <u>See</u> 4 Nimmer &
Nimmer, § 14.09 (2017).  Plaintiff urges the Court to follow the
Ninth Circuit's decision in <u>Twentieth Century Fox Film Corp. v.
Entm't Distrib.</u>, 429 F.3d 869 (9th Cir. 2005), in which the court
concluded that, by specifically authorizing the recovery of
"full" costs, Congress empowered "district courts . . . [to]
award otherwise non-taxable costs, including those that lie
outside the scope of § 1920, under § 505."  <u>Twentieth Century
Fox</u>, 429 F.3d at 885.  Defendants contend that the Sixth Circuit
has not clearly adopted the Ninth Circuit's test.  (ECF No. 174
at 5477.)  They argue that "Sixth Circuit jurisprudence suggests

that an award of non-taxable costs should be evaluated for
reasonableness in light of similar factors for awarding
attorneys' fees."  (Id.)

The Court need not decide whether sections 1821 and 1920
limit the recovery of non-taxable costs under Section 505.  For
the reasons discussed above as to attorney's fees, an award of
expert witness fees, in any amount, is not warranted in this
case.  See 4 Nimmer & Nimmer, § 14.09 (2017) ("As with the award
of fees, an award of costs typically is not made if there is no
element of moral blame attributable to the party against whom
such costs are sought." (footnotes omitted)).

Ducks Unlimited's request for $10,845.29 in taxable costs is
GRANTED and its request for $5,515.29 in non-taxable costs is
DENIED.

**C. Remedies – Trademark Infringement Profits**

"In assessing profits the plaintiff shall be required to
prove defendant's sales only; defendant must prove all elements
of cost or deduction claimed."  15 U.S.C. § 1117(a).  "Any doubts
about the actual amount of gross sales or profits will be
resolved against the infringing party."  5 McCarthy on Trademarks
and Unfair Competition § 30:66 (5th ed.) (2017).  "If the
infringer provides no evidence from which the court can determine
the amount of any cost deductions, there is no obligation to make

an estimate, and 'costs' need not form any part of the calculation of profits." Id.  "The infringer's burden of proving deductible costs is not carried by records showing only a vague, undifferentiated category of 'overhead' or 'checks written.'" Id. (citing 4 Nimmer on Copyright § 14.03).

The supporting documentation cannot be incomplete, contradictory, or contain imprecise figures.  See H-D Michigan Inc. v. Biker's Dream Inc., 48 U.S.P.Q.2d 1108, 1998 WL 697898 (C.D. Cal. 1998), aff'd in part, appeal dismissed in part, 230 F.3d 1366 (9th Cir. 2000) (finding failure to prove any cost deductions where infringer's cost data is "incomplete and contradictory"); see also Aris Isotoner Inc. v. Dong Jin Trading Co., Inc., 17 U.S.P.Q.2d 1017, 1989 WL 236526, *5 (S.D.N.Y. 1989) ("[I]f the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary evidence."); 4 Nimmer on Copyright § 14.03 (2017) ("[O]nly expenses proven with some specificity to relate to the infringing work may be deducted in determining the profits attributable to that work.").  "[T]he determination of overhead presents an issue of fact," so the "[d]efendant bears the burden of proving that each item of general expense contributed to the production of the infringing items, and of further offering a

24

fair and acceptable formula for allocating a given portion of overhead to the particular infringing items in issue." 4 Nimmer on Copyright § 14.03 (2017). "The defendant may not claim the absence of profits merely because the profits attributable to the infringing items were not sufficient to offset the losses sustained by the defendant from other aspects of his business." Id.

Defendants have provided an accounting of total sales from the last date of production in February 2017, to August 18, 2017. They assert that their total sales of infringing products were $13,371.85. (ECF No. 182.) They also assert that they incurred $34,550.84 in costs, and thus experienced a loss of $21,178.99. (Id.) The exhibits attached to Defendants' accounting show that total "Costs Associated with Original Boondux Logo Only" were $40,184.73. (ECF No. 182-2.) The affidavit of Jeanne Sutton represents that some costs are not fully attributable to the Boondux Logo, and thus the total costs incurred were actually $34,550.84. (Aff'd Jeanne Sutton, ECF No. 182-3.) Based on Defendants' purported loss, they seek a reduction of Ducks Unlimited's profit award from $258,919.04 to $237,740.05. (ECF No. 182.)

Defendants, through the affidavit of Jeanne Sutton ("Ms. Sutton"), allege 13 deductible expenses and costs. (Aff'd Jeanne

Sutton, ECF No. 182-3 ¶¶ 6–18.)  Attached to Ms. Sutton's

affidavit are two tables that Defendants appear to have created.

One table consists of four columns entitled "Description,"

"Quantity," "Total Sales," and "Cost of Goods:"

## BOONDUX, LLC

| Description | Quantity | Total Sales | Cost of Goods |
|---|---|---|---|
| Mesh Caps | 95 | $ 2,090.00 | $ 3,319.68 |
| Visors | 17 | $ 305.15 | $ 1,136.26 |
| Sunglasses Straps | 14 | $ 97.30 | $ 2,033.24 |
| Wrap Stickers | 31 | $ 197.45 | $ 1,765.50 |
| Vintage Shirts | 13 | $ 324.35 | $ 0.00 |
| Cotton Short Sleeve | 35 | $ 873.25 | $ 1,558.44 |
| Marlin Short Sleeve | 6 | $ 119.70 | $ 0.00 |
| Marlin Long Sleeve | 3 | $ 74.85 | $ 0.00 |
| Snuff Skins | 9 | $ 62.55 | $ 900.00 |
| Blades Camo Cap | 8 | $ 192.00 | $ 0.00 |
| Break up Camo Cap | 6 | $ 107.70 | $ 0.00 |
| Classic Cap | 3 | $ 66.00 | $ 0.00 |
| Glow in the Dark Tanks | 2 | $ 47.90 | $ 0.00 |
| Luck of Duck Shirt | 3 | $ 89.95 | $ 0.00 |
| Keychains | 13 | $ 90.35 | $ 0.00 |
| Original Perform Shortsleeve | 35 | $ 1,048.35 | $ 1,622.83 |
| Original Perform Longsleeve | 33 | $ 1,155.00 | $ 10,293.18 |
| State Decals | 68 | $ 1,535.00 | $ 91.41 |
| Boondux Decals | 357 | $ 4,895.00 | $ 246.06 |
| | | $ 13,371.85 | $ 22,966.60 |

(ECF No. 182-1.)

The second table consists of two columns entitled, "Cost

Associated with Original Boondux Logo Only" and "Cost:"

**BOONDUX, LLC**

| Cost Associated with Original Boondux Logo Only | Cost |
|---|---:|
| Cost of Goods Sold | $ 22,966.60 |
| Credit Card Processing Fees | 668.58 |
| Website Fees | 1664.94 |
| Shipping Program | 402.77 |
| Office Supplies | 236.62 |
| Hangtags | 3850.00 |
| Shipping Supplies | 444.00 |
| Advertising | 585.00 |
| Secretary of State | 70.00 |
| Repairs | 381.22 |
| Accounting | 1535.00 |
| Labor | 7180.00 |
| Gas | 200.00 |
| | $ 40,184.73 |

(ECF No. 182-2.)  Ms. Sutton describes the categories of costs in her affidavit.  (Aff'd Jeanne Sutton, ECF No. 182-3.)

No methodology is suggested and no facts are presented to explain the difference between the not-fully-attributable costs of $40,184.73 in the second table and the costs of $34,558.84 that Ms. Sutton asserts were actually incurred.

A review of the cost categories in the affidavit reinforces the lack of clarity and factual support.  First, Ms. Sutton asserts that Defendants incurred $22,966.00 in costs for manufacturing and printing products bearing the Boondux Logo.

(Id. ¶ 6.) Defendants provide no purchase orders, receipts,
invoices, or other documentation to support this calculation. It
is unclear from the first table why some products cost $145 to
manufacture and print (e.g., sunglasses straps) while other
products cost nothing to manufacture and print (e.g., glow in the
dark tanks). (See ECF No. 182-1.) There is no explanation about
how the table was compiled or the values calculated. Defendants
are in the best position to provide documentation supporting
their deductions and costs, but have failed to provide
satisfactory evidence. Defendants have failed to prove that they
incurred $22,966.00 in manufacturing and printing costs.

Second, Ms. Sutton asserts that Defendants have incurred
$668.58 in credit card processing fees for products bearing the
Boondux Logo. (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 7.)
Defendants provide no receipts, invoices, or purchase orders
associated with those credit card processing fees, although
Defendants are in the best position to provide documentation.
Defendants have failed to prove that they incurred $668.96 in
credit card processing fees associated with infringing products.

Third, Ms. Sutton asserts that Defendants have incurred
$1664.94 in website fees for hosting Boondux.com, $832.47 of
which is attributable to Boondux Logo related costs. (Aff'd
Jeanne Sutton, ECF No. 182-3 ¶ 8.) She asserts that, between

February 2017 and August 18, 2017 "approximately 50 percent of all products sold bore the Boondux Mark." (Id. ¶ 5.)

"If the infringer makes or sells several different brands of goods and only one is infringing, then it must apportion costs to the infringing line." 5 McCarthy on Trademarks and Unfair Competition § 30:68 (5th ed.) (2017). "Where the infringer can show from his books the percentage of gross income derived from the sale of the infringing goods separate from that of noninfringing goods, overhead costs should generally be apportioned in the same proportion as gross sales." Id. Defendants provide no evidence to support the proposition that 50% of sales between February and August 2017 should be apportioned to products bearing the Boondux Logo, although Defendants are in the best position to provide documentation. Defendants present no evidence to support the allocation of profits, costs, and expenses between infringing and non-infringing products.

Defendants provide no invoices, receipts, or other supporting documentation to establish that they have incurred $1664.94 in website fees for hosting Boondux.com. The self-created table, which includes "Website Fees" as a "Cost Associated with Original Boondux Logo Only," is vague and undifferentiated. (See ECF No. 182-2.) Without supporting

documentation, it is unclear how the fees were calculated. Defendants have failed to prove they are entitled to $832.47 in deductions and costs for website fees.

Fourth, Ms. Sutton asserts that Defendants incurred $402.77 for shipping products bearing the Boondux Logo through USPS or UPS. (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 9.) Defendants provide no invoices, receipts, or other supporting documentation to establish that they have incurred $402.77 for shipping products bearing the Boondux Logo through USPS or UPS. Without documentation, it is unclear how that amount was calculated. Defendants have failed to prove they are entitled to $402.77 in shipping costs for products bearing the Boondux Logo.

Fifth, Ms. Sutton asserts that Defendants incurred "at least $236.32" in costs for "general office supplies such as ink, paper, labels and other general office materials." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 10.) "When applying the percentage applicable to the Boondux Logo, at least $118.31 is attributable to the Boondux Logo related costs." (Id.) For the reasons discussed above, Defendants have failed to prove that 50% of sales were attributable to products bearing the Boondux Logo. The application of a 50% apportionment is not well taken. Defendants present only the table as a record of their costs. That record shows only a vague, undifferentiated category of

"Office Supplies." The office supply costs associated with the infringing products cannot be determined. Defendants have failed to prove they are entitled to any general office supply costs.

Sixth, Ms. Sutton asserts that Defendants incurred $3,850.99 in costs for hangtags bearing the Boondux Logo. (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 11.) Defendants provide no documentation explaining how that figure was calculated. Defendants provide no invoices, receipts, purchase orders, or other documentation to demonstrate that they incurred the cost and that the cost is associated with infringing sales. Defendants are in the best position to provide that supporting documentation. Defendants have failed to prove they are entitled to costs incurred for hangtags bearing the Boondux Logo.

Seventh, Ms. Sutton asserts that Defendants incurred "at least $440.00" in costs for shipping supplies bearing the Boondux Logo. (Aff'd Jeanne Sutton, ECF No. 183-2 ¶ 12.) She refers to the second table and to Trial Exhibit No. 94 (a cylindrical, cardboard shipping container bearing the Boondux Logo). (Id.) Defendants provide no supporting documentation. Ms. Sutton's statement that the cost is "at least $440.00" demonstrates that the value is vague and incomplete. It is unclear how the cost was calculated. Defendants have failed to prove they are

31

entitled to costs and deductions for shipping supplies bearing the Boondux Logo.

Eighth, Ms. Sutton asserts that Defendants have incurred $585.00 in "advertising emails sent by Boondux to its current and former customers using the MailChimp emailing service[]. These mailers are prominently featured and advertise[] products bearing the Boondux Logo." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 13.) Defendants provide no receipts or invoices for these services, although they are in the best position to provide documentation. It is unclear how the cost was calculated. Defendants have failed to prove they are entitled to $585.00 in advertising costs for MailChimp's emailing service.

Ninth, Ms. Sutton asserts that Defendants have incurred $70.00 in fees to maintain Boondux's business registration with the Louisiana Secretary of State. (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 14.) Defendants provide no receipts or invoices for the registration fee, although they are in the best position to provide documentation. Defendants also provide no proof that this cost was incurred in connection with the sale of its infringing products. Because Defendants sell non-infringing products, they would have paid the registration fee regardless of their infringing sales. See Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., No. 3:07cv163-RJC, 2009 WL 2105933, at *4

(W.D.N.C. July 13, 2009) (rejecting infringer's overhead costs because it failed to provide proof that those costs were incurred in connection with the sale of the infringing product and that it would have paid those costs regardless of its infringing sales). Defendants fail to prove that they are entitled to any business registration costs.

Tenth, Ms. Sutton asserts that Defendants have incurred $381.22 in costs for "repairs made to the trailer owned by Boondux. In June 2017, a panel on the trailer was leaking and had to be replaced." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 15.) Like Defendants' business registration fee, the cost of repairs to a trailer would have been incurred regardless of Defendants' infringing sales. There is no nexus between the trailer and the infringing sales. Defendants have failed to prove they are entitled to costs of repairs to the trailer.

Eleventh, Ms. Sutton asserts that Defendants have incurred $1535.00 in "general expenses paid to Boondux's accountants who prepare Boondux's tax filings and sales tax calculations." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 16.) Defendants provide no receipt or invoice for those services, although they are in the best position to provide documentation. Defendants would have paid those costs regardless of their infringing sales. Defendants have failed to prove that they are entitled to costs

33

incurred because their accountants prepared Boondux's tax filings and sales tax calculations.

Twelfth, Ms. Sutton asserts that Defendants have incurred $3590.00 in labor costs "paid to [her] as salary for [her] work for Boondux." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 17.) Defendants provide no proof of Ms. Sutton's employment or of her salaried position with Boondux. The trial testimony is to the contrary. (Trial Tr., ECF No. 153 at 4195:4-20; Trial Tr., ECF No. 154 at 4260:2-11 ("Q: So, you have never financially compensated [Ms. Sutton] for anything in connection with the Boondux business operation, correct? A: Well, I mean, maybe there's been some, like, business gifts or something like that but as far as giving her a direct paycheck, no, ma'am.").) "The value of a defendant's own labor . . . and salaries or wages paid to persons responsible for the tortious conduct, are not ordinarily deductible." Restatement (Third) of Unfair Competition § 37 cmt. g (2017). Defendants have failed to prove that they are entitled to $3590.00 in deductions and costs for Ms. Sutton's compensation.

Thirteenth, Ms. Sutton asserts that Defendants have incurred "at least $200" in gasoline "expended in dropping off packages to be shipped at the post office." (Aff'd Jeanne Sutton, ECF No. 182-3 ¶ 18.) Defendants provide no receipts, proof of mileage,

or formula for that expense.  Ms. Sutton's use of "at least" demonstrates that the figure is imprecise, requiring some upward or downward departure from the actual cost.  The uncertainty of gasoline costs is resolved in Ducks Unlimited's favor. Defendants have failed to prove that they are entitled to costs and deductions for gasoline expended in dropping off packages at the post office.

Defendants have failed to prove they are entitled to any of their alleged costs and deductions.  Ducks Unlimited is awarded $13,371.85 for profits arising from trademark infringement between February 2017 and August 18, 2017.

## IV.  Conclusion

For the foregoing reasons, Ducks Unlimited's Motion for Attorney's Fees, Expenses, and Costs is GRANTED in part and DENIED in part.  Ducks Unlimited is AWARDED $10,845.29 in taxable costs.  It is not entitled to attorney's fees or non-taxable costs.  Ducks Unlimited is AWARDED $13,371.85 for profits arising from trademark infringement, in addition to damages awarded in the Court's August 18, 2017 Memorandum Opinion (ECF No. 163) and the Court's September 8, 2017 Order (ECF No. 166).

So ordered this 9th day of March, 2018.

_/s/ Samuel H. Mays, Jr._
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT COURT JUDGE